PARSHALL v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, General Term, Second Department. December 12, 1892.)

Appeal from circuit court, Orange county.
Action by Annie J. Parshall against the New York, Lake Erie & Western Railroad Company to recover damages for the death of plaintiff's intestate, her husband, alleged to have been caused by the negligence of defendant. On the trial a verdict for $5,000 was rendered in favor of plaintiff, and from the judgment entered thereon defendant appeals. Affirmed.
Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

Lewis E. Carr, for appellant.
W. F. O'Neill, for respondent.

PRATT, J. The case of Stott v. This Defendant, 21 N. Y. S. 353, (decided this term,) arose upon the same state of facts, and the same disposition must be made in this case as in that. Judgment affirmed, with costs.

BARNARD, P. J., concurs.

DYKMAN, J., (dissenting.) This is an appeal from a judgment entered upon a verdict in favor of the plaintiff and from an order denying a motion for a new trial upon the minutes of the court. The action is for the recovery of damages resulting from the death of the plaintiff's intestate, who was her husband, caused, as the plaintiff charges, by the negligence of the defendant. The cause was tried at the Orange county circuit in November, 1891, and a verdict was rendered in favor of the plaintiff for $5,000. In the evening of the 17th day of July, 1890, Henry Clay Parshall, the plaintiff's intestate, and James Stott rode in a cart

drawn by one horse, which was driven by Parshall, from La Grange to Goshen, in Orange county. The points of the compass cannot be ascertained from the case with precision, but they seem to have been coming from the west or south-west, for when they came near the east-bound track, as it is termed in the case, which is the track of the railroad upon which the cars run towards New York, they were stopped by the flagman, who was standing on the west-bound track to flag a milk train, which was then moving towards New York on the east-bound track. The testimony of Stott, who was in the cart with the deceased, and who was examined as a witness for the plaintiff, tended to show that as they came up Main street, towards the railroad, the flagman at the crossing flagged them to stop, and they did so on the right side of the road, as the milk train was coming along, and that after the milk train had passed, the flagman flagged them to come on, which they did, and when they reached the track the flagman endeavored to stop them, but could not succeed, and the cart was struck by a west-bound train, the men were both thrown out, Parshall was killed, and Stott was injured.

The flagman, who was a witness for the defendant, denied the material part of that testimony, and denied that he had a flag, or that he gave them any signal to go on, but, on the contrary, he testified that he had a lantern, which he waved as a signal for them to stop. This unfortunate occurrence was witnessed by many persons who were disinterested, and had no connection with the railroad company, and five of them were examined and gave testimony in behalf of the defendant upon the trial. All these witnesses testified that the flagman had a lantern, which he waved towards the two men, and that he called out to them, for the purpose of arresting their attention, when they were on Main street, coming towards the train. There is no complaint of failure to give the usual signals to indicate the approach of the train, and the flagman was at his post, and discharged his duty and stopped the men until the milk train had gone past. Then they moved forward, and, unless they did so by the direction or invitation of the flagman, there is no ground for a recovery in this action, and the trial judge so charged in these decided and unmistakable terms: "Unless the proof satisfies you that the guard there invited the people to pass, and, in pursuance of that invitation, they did pass, so far as they were permitted, until they were struck by this train coming from New York and going toward the west,—unless you so find,—there is no case of negligence whatever, and you will find for the defendant." While we must assume that the fact was found which enabled the jury to make a verdict for the plaintiff under this charge, we must yet examine the testimony, and determine whether there was evidence to support such finding. On his direct examination the witness Stott said the flagman flagged them to stop, and they did stop, about 50 feet from the crossing, and that the flagman then flagged them to come along when the milk train had gone past. On his cross-examination he was asked what motion the flagman made when he motioned them to come on, and he said he folded up his flag, and put it under his arm, and walked down the track behind the milk train, out of sight behind a car, and they construed that as an invitation to come on. He further said it was less than a minute before the flagman reappeared, and then they were on the east-bound track. Then he said the flagman shouted to them, but afterwards he said he could not be sure he shouted to them at all, or made any motion towards them. In opposition to this the flagman swore he had no flag at that time, and five witnesses corroborate him, and say they heard the shouting of the flagman, and saw him have a lantern. This last testimony is the most natural. It was about 8 o'clock in the evening, and the flagman says it was dark. That was the time to use a lantern, and not a flag, as the former could be seen when it was waved, and a flag could not be seen. If the flagman had no flag at that time, the testimony of Stott fails entirely, for it was the folding of the flag which he says was construed into an invitation to go forward. It is inconceivable that the flagman would fold his flag and walk away when the milk train was passing out on the east-bound track, and another train was coming in whose approach he had detected, and which would be as dangerous to the two men as the other, and leave them unnoticed to encounter the peril, when down to that time he had been so active and faithful in the discharge of his duty. The testimony of Stott is to be taken with much caution, in view of his interest alone, but, when it is contradicted by the probabilities and circumstances, the reasonable and natural inferences, and the testimony of five disinterested witnesses, it is entitled to no consideration. We think, therefore, there was no evidence to support the verdict.

This view renders it unnecessary to notice the absence of proof of care on the part of the deceased and Stott, but if they advanced, as he says they did, after

the milk train had gone past, they did so after the flagman had become aware of the approach of the west-bound train that caused the calamity, and we find no evidence to show that they, either of them, looked or listened for the approach of another train.

It is unnecessary also to examine the other questions raised by the appellant. The judgment and order denying the motion for a new trial should be reversed, and a new trial granted, with costs to abide the event.